UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
KELLY MONTELLO                                              Index No.

                      Plaintiff,                **COMPLAINT**

    -against-

S&J OPERATIONAL LLC d/b/a LUXOR
NURSING AND REHABILITATION AT
MILLS POND, CENTERS FOR SPECIALTY CARE GROUP LLC
d/b/a CENTERS HEALTH CARE, and
MICHAEL HOCH

                                                                      **JURY TRIAL**
                                                                      **DEMANDED**

                      Defendants.
------------------------------------------------------------

      Plaintiff, Kelly Montello ("Plaintiff"), by her attorney, THE LAW OFFICE OF JON A. STOCKMAN, as and for her Complaint, respectfully alleges the following:

## **NATURE OF THE CASE**

    1.    Plaintiff brings this action against Defendants S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond, Centers for Specialty Care Group LLC d/b/a Centers Health Care[1], and Michael Hoch (collectively referred to as "Defendants") pursuant to the Rehabilitation Act of 1973 ("Rehabilitation Act"), the Americans with Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL").

    2.    Plaintiff was employed by Defendants as Director of Recreation at Luxor Nursing and Rehabilitation at Mills Pond from September, 2018 through January 31, 2020, when Defendants terminated her employment in retaliation for her having opposed Defendants'

---

[1] Defendant S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond and Defendant Centers for Specialty Care Group LLC d/b/a Centers Health Care shall hereinafter be collectively referred to as "the Corporate Defendants."

1

discriminatory treatment of a job applicant/employee who was (or who was perceived by Defendants) to be developmentally disabled. Shortly after Plaintiff engaged in protected activity, the Corporate Defendants' Administration became significantly less responsive to and less supportive of her (in contrast to Defendants' treatment of her prior to her engaging in protected activity). Ultimately, Defendants terminated Plaintiff's employment without legitimate reason less than three (3) months after she last engaged in protected activity.

## JURISDICTION AND VENUE

3. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the events giving rise to the claims occurred within this judicial district.

4. This Court possesses jurisdiction over this action because it involves federal claims (Plaintiff's Rehabilitation Act and ADA claims).

5. Pursuant to 28 U.S.C. § 1367(a), this Court possesses supplemental jurisdiction over the state claim in this action because they are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

6. Plaintiff filed a Charge (EEOC Charge No. 520-2021-00042) against the Corporate Defendants with the United States Equal Employment Opportunity Commission ("EEOC") on October 2, 2020, less than three-hundred (300) days of her termination.

7. Plaintiff's EEOC Charge has been pending with the EEOC for more than 180 days.

8. Plaintiff requested a Right to Sue letter on January 10, 2023.

9. Plaintiff will amend this pleading upon receipt of a Right to Sue letter from the EEOC.

## THE PARTIES

10. Plaintiff is a resident of the State of New York, County of Suffolk.

11. At all times relevant to the Complaint, Plaintiff was an employee of the Defendants.

12. Defendant S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond is/was a limited liability company incorporated in the State of New York with its principal place of business located at 273 Moriches Road, St. James, NY 11780.

13. At all times relevant to this Complaint, Defendant S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond employed more than twenty (20) employees.

14. At all times relevant to this Complaint, Defendant S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond engaged in interstate commerce.

15. At all times relevant to this Complaint, Defendant S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond was the recipient of federal financial assistance.

16. Upon information and belief, Luxor Nursing and Rehabilitation at Mills Pond, which is/was operated by Defendant S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond and which upon information and belief is/was managed by Defendant Centers for Specialty Care Group LLC d/b/a Centers Health Care, accepted Medicare and Medicaid.

17. In a disclosure made pursuant to Section 2829(2)(c) of the New York State Public Health Law, Luxor Nursing and Rehabilitation at Mills Pond identified many entities with whom it entered into contracts paid for with Medicaid or Medicare funds.

18. Defendant Centers for Specialty Care Group LLC d/b/a Centers Health Care is/was a limited liability company incorporated in the State of New York with its principal place of business located at 4770 White Plains Road, Bronx NY 10470.

19. At all times relevant to this Complaint, Defendant Centers for Specialty Care Group LLC d/b/a Centers Health Care employed more than twenty (20) employees.

20. At all times relevant to this Complaint, Defendant Centers for Specialty Care Group LLC d/b/a Centers Health Care engaged in interstate commerce.

21. Upon information and belief, during Plaintiff's tenure, Defendant S&J Operational LLC d/b/a Luxor Nursing and Rehabilitation at Mills Pond and Centers for Specialty Care Group LLC d/b/a Centers Health Care were a single integrated entity and/or were Plaintiff's joint employer.

22. The New York State Department of Health profile for Luxor Nursing and Rehabilitation at Mills Pond indicates that the facility is operated by "S&J Operational LLC."

23. Plaintiff's last wage statement identifies her employer as "Mills Pond Nursing & Rehab." On the New York State Department of State corporate database, Mills Pond Nursing and Rehabilitation Center is identified as an assumed name for S&J Operational LLC.

24. Plaintiff's last wage statement states that the address for "Mills Pond Nursing & Rehab" is 4770 White Plains Road, Bronx, NY 10470. This address is the address for "Centers for Specialty Care Group LLC," which (to the best of Plaintiff's knowledge) manages Luxor Nursing and Rehabilitation at Mills Pond.

25. The New York State Secretary of State corporate database indicates that "[t]he Post Office address to which the Secretary of State shall mail a copy of any process against [S&J Operational LLC] served upon the Secretary of State by personal delivery" is "C/O MORDECHAI CHAITOVSKY 4770 WHITE PLAINS ROAD, BRONX , NY, UNITED STATES, 10470."

26. To the best of Plaintiff's knowledge, her boss, Michael Hoch (the Administrator at Luxor Nursing and Rehabilitation at Mills Pond) was employed directly by Centers for Specialty Care Group LLC d/b/a Centers Health Care.

27. To the best of Plaintiff's knowledge, the Administration at Luxor Nursing and Rehabilitation at Mills Pond was required to obtain the approval of Centers for Specialty Care Group LLC d/b/a Centers Health Care before hiring new employees.

28. During Plaintiff's tenure, Defendant Michael Hoch was the Administrator of Luxor Nursing and Rehabilitation at Mills Pond.

29. As Administrator of Luxor Nursing and Rehabilitation at Mills Pond, Defendant Michael Hoch participated in hiring and firing decisions at Luxor Nursing and Rehabilitation at Mills Pond.

30. Upon information and belief, Defendant Michael Hoch actually participated in the decision to terminate Plaintiff's employment.  Accordingly, Defendant Michael Hoch is liable under the NYSHRL as an aider and abettor.

## THE FACTS

**PLAINTIFF'S STRONG JOB PERFORMANCE**

31. Plaintiff was employed by Defendants as Director of Recreation at Luxor Nursing and Rehabilitation at Mills Pond ("Luxor") located at 273 Moriches Road, St. James, NY 11780 from September, 2018 through January 31, 2020.

32. Throughout Plaintiff's employment with Defendants, she performed strongly and was never written up or warned her employment was in danger.

**PLAINTIFF RECOMMENDS DEFENDANTS HIRE JOSHUA**

33. In or around September, 2019, Plaintiff conducted a number of telephone interviews with Joshua, an individual who was (or was to perceived by Defendants to be) developmentally disabled, for a recreational aide position (an entry level position paying slightly above minimum wage).

34. Plaintiff concluded that Joshua qualified for an in-person interview due to his performance during the telephone interviews, due to his enthusiasm, and due to his relevant work experience.

35. After Luxor's Assistant Director of Recreation, Karen Cono met with Joshua in person at Luxor, she recommended to Plaintiff that Luxor hire him. That day, Plaintiff briefly interacted with Joshua in person and concluded that he had a pleasant demeanor.

36. Ultimately, Plaintiff recommended that Luxor hire Joshua for the recreational aide position. Thereafter, Joshua's hiring was approved.

**DEFENDANTS RESCIND OFFER TO HIRE JOSHUA BECAUSE THEY PERCEIVE HIM TO BE DISABLED. PLAINTIFF OBJECTS TO DEFENDANTS' DISCRIMINATORY CONDUCT**

37. In early to mid September of 2019, Joshua went to Luxor as part of the onboarding process. While Joshua was there, Luxor's Administrator, Michael Hoch directed Plaintiff to come to his office to discuss Joshua's hiring. When Plaintiff spoke to Mr. Hoch in his office (in the presence of Assistant Administrator, Alyssa Perillo), Mr. Hoch stated "What's wrong with this kid?" and "he sounds off to me." Mr. Hoch then directed Plaintiff to invite Joshua into his office to meet with them. During the meeting, Joshua noted that it is his "dream job" to work full time in a recreation department.

38. After the aforementioned meeting, Mr. Hoch told Plaintiff "Tell me that there's not something wrong with him." Mr. Hoch questioned Ms. Montello whether Joshua was "retarded."

39. Moreover, Mr. Hoch indicated to Plaintiff that Joshua's statement that it was his "dream job" to work in recreation "should have been [Plaintiff's] first indication that something was wrong with him."

40. In response to Mr. Hoch's comments about Joshua, Plaintiff countered with all of Joshua's positive attributes and qualities such as his enthusiasm, his can-do attitude, his experience working in a skilled nursing facility, his experience volunteering in recreation, and (perhaps most importantly) his willingness to work any shift.

41. Nevertheless, Mr. Hoch immediately instructed Linda McDermott (Administrative Assistant) to stop the hiring process. Mr. Hoch then instructed Plaintiff to call Joshua into a private area and tell him the position was no longer available and that someone who just left was coming back full time.

42. In response, Plaintiff communicated her discomfort with rescinding Joshua's hiring offer. Plaintiff warned Mr. Hoch that the decision to rescind Joshua's hiring offer could be the basis for a discrimination lawsuit if it was discovered Joshua was not being hired because of a suspected disability.

43. Ultimately, Mr. Hoch disregarded Plaintiff's concern and commanded Plaintiff to follow his directive.

44. Based on Mr. Hoch's directive, Plaintiff notified Joshua that the position Luxor offered him is no longer available and that someone who just left is coming back full time.

45. Joshua seemed to be very upset, almost on the verge of tears. Joshua pleaded with Plaintiff not to rescind the offer to hire him. Joshua indicated he already resigned from his prior position and that this was not fair. Joshua stated that he "know[s] [his] rights."

46. Later that afternoon, Plaintiff received a phone call from Joshua's father. During the call, Joshua's father notified Plaintiff that he is a business owner and knows the law. Joshua's father indicated that Luxor cannot rescind a job offer for no reason like it had done with Joshua.

47. Thereafter, Plaintiff informed Mr. Hoch about her conversation with Joshua's father. Mr. Hoch told Plaintiff that "this was [her] mess and [she had] to clean it up."

**Defendants Reoffer to Hire Joshua, But Mr. Hoch Makes It Clear to Plaintiff That Defendants Intend To Terminate Joshua During His Probationary Period.  Plaintiff Objects To Defendants' Discriminatory Conduct**

48. About a day or so later, Plaintiff again voiced her concern to Mr. Hoch that what they did to Joshua was wrong and it would be in their best interest to hire Joshua.

49. Shortly thereafter, Mr. Hoch informed Plaintiff that Luxor was going to reoffer to hire Joshua.

50. Mr. Hoch directed Plaintiff to call Joshua and tell him Luxor made a mistake.

51. Thereafter, Mr. Hoch made it clear that he wanted Plaintiff to be very strict with the rules and make sure that she write Joshua up for anything he did wrong so he could be terminated before the end of his probation.

52. Plaintiff communicated her disapproval to Mr. Hoch about this approach.

53. Plaintiff indicated to Mr. Hoch that one of her best employees in the past was a young man who had Albinism and had to wear large glasses. Plaintiff explained to Mr. Hoch that Joshua should be treated like everyone else. Plaintiff communicated that if Joshua had performance

8

issues, he should be counseled like everyone else, but it was wrong to look for reasons to terminate him.

54. Joshua started working for Defendants in early to mid October 2019 and was ultimately terminated in early December, 2019.

55. Plaintiff remembers speaking to Ms. Perillo on the phone in early November, 2019, and complaining to her that Luxor's treatment of Joshua was not right. Plaintiff indicated to Ms. Perillo that she went to college to become a special education teacher and that Luxor's treatment of Joshua goes against everything that she believes in.

56. At one point during his tenure with Defendants, Joshua indicated to Plaintiff that he used to be on the autism spectrum.

### Defendants Terminate Plaintiff

57. On or about January 31, 2020, Defendants terminated Plaintiff's employment without providing her any legitimate reason for doing so.

58. Upon information and belief, Defendants practiced progressive discipline and Defendants deviated from such progressive discipline practices in terminating Plaintiff without any prior write-ups and without warning her that her employment was in danger.

59. Notably, after Plaintiff objected to Defendants' discriminatory decision to rescind its offer to hire Joshua, the Corporate Defendants' Administration began ignoring Plaintiff's emails and questions and failed to provide the support necessary for Plaintiff to successfully run her department.

60. As a key example of how Defendants failed to provide Plaintiff necessary support, after Plaintiff engaged in protected activity, (despite Plaintiff's department being understaffed and despite Plaintiff's repeatedly voicing concern to the Corporate Defendants' Administration about

this) Defendants delayed making hiring decisions with respect to a number of job applicants Plaintiff interviewed and recommended for hiring (resulting in such job applicants finding other employment).

61. Plaintiff does not recall Defendants' engaging in these types of delays during the hiring process prior to her engaging in protected activity. In fact, when Plaintiff recommended Joshua's hiring, his hiring was approved that same day.

62. Upon information and belief, Plaintiff replaced with an individual who did not engage in Rehabilitation Act/ADA/NYSHRL protected activity known to Defendants at the time of hiring. Plaintiff believes this to be the case because the Corporate Defendants did not claim in their EEOC Position Statement that they replaced Plaintiff with an individual who engaged in Rehabilitation Act/ADA/NYSHRL protected activity.

## **FIRST CLAIM FOR RELIEF**
*(Violation of the Rehabilitation Act by the Corporate Defendants: Retaliation)*

63. Plaintiff repeats and realleges each and every allegation contained herein.

64. The Corporate Defendants violated the Rehabilitation Act by terminating Plaintiff because she engaged in Rehabilitation Act protected activity.

65. As a proximate result of the Corporate Defendants' retaliatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

66. As a proximate result of the Corporate Defendants' retaliatory actions, Plaintiff has suffered emotional distress.

67. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

68. Due to the severity of the Corporate Defendants' conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff because she engaged in Rehabilitation Act protected activity, the Corporate Defendants knowingly violated the Rehabilitation Act and/or acted in reckless disregard of Plaintiff's rights under the Rehabilitation Act.

### SECOND CLAIM FOR RELIEF
*(Violation of the ADA by the Corporate Defendants: Retaliation)*

69. Plaintiff repeats and realleges each and every allegation contained herein.

70. The Corporate Defendants violated the ADA by terminating Plaintiff because she engaged in ADA protected activity.

71. As a proximate result of the Corporate Defendants' retaliatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

72. As a proximate result of the Corporate Defendants' retaliatory actions, Plaintiff has suffered emotional distress.

73. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

74. Due to the severity of the Corporate Defendants' conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff because she engaged in ADA protected activity, the Corporate Defendants knowingly violated the ADA and/or acted in reckless disregard of Plaintiff's rights under the ADA.

### THIRD CLAIM FOR RELIEF
*(Violation of the NYSHRL: Retaliation)*

75. Plaintiff repeats and realleges each and every allegation contained herein.

76. Defendants violated the NYSHRL by terminating Plaintiff because she engaged in NYSHRL protected activity.

77. Defendants violated the NYSHRL because Plaintiff's NYSHRL protected activity played a role in Defendants' decision to terminate her employment.

78. As a proximate result of the Defendants' retaliatory actions, Plaintiff has suffered loss of earnings, and related employment benefits.

79. As a proximate result of the Defendants' retaliatory actions, Plaintiff has suffered emotional distress.

80. Plaintiff is entitled to an award for damages for her past and future economic loss and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

81. Due to the severity of the Defendants' conduct, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial. By terminating Plaintiff because she engaged in NYSHRL protected activity, the Defendants knowingly violated the NYSHRL and/or acted in reckless disregard of Plaintiff's rights under the NYSHRL.

## **DEMAND FOR JURY TRIAL**

82. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment as follows:

   i. awarding Plaintiff emotional distress damages;

   ii. awarding Plaintiff back pay and front pay, and affording all benefits that would have been afforded Plaintiff but for Defendant's unlawful actions;

    iii.    awarding Plaintiff punitive damages;

    iv.    awarding Plaintiff's cost of this suit;

    v.    awarding reasonable attorneys' fees;

    vi.    awarding pre- and post-judgment interest; and

    vii.    awarding such other and further relief as the court deems just and proper.

Dated: New York, New York
January 26, 2023

                      *Respectfully submitted*,
                      **THE LAW OFFICE OF**
                      **JON A. STOCKMAN**

By:    /S/ Jon A. Stockman, Esq.
        Jon A. Stockman, Esq.
        11 Broadway, Suite 615
        New York, New York 10004
        (516) 547-6418 telephone
        jstockman@yournycattorney.com
        Attorney for Plaintiff, Kelly Montello